**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NOVA HEALTH SYSTEMS, doing
business as Reproductive Services, on
behalf of itself, its staff and its
patients,

      Plaintiff - Appellee,

v.

DEAN GANDY, in his official
capacity as Executive Director of the
University Hospital Authority; TERRY
L. CLINE, in his official capacity as
Commissioner of the Oklahoma
Department of Mental Health and
Substance Abuse Services; DR.
JAMES HALLIGAN, in his official
capacity as President of Oklahoma
State University; DAVID L. BOREN,
in his official capacity as President of
the University of Oklahoma,

      Defendants - Appellants,

and

MIKE FOGARTY, in his official
capacity as Chief Executive Officer of
the Oklahoma Health Care Authority,

      Defendant.

No. 02-5094

---

SEVENTY-SIX OKLAHOMA STATE

LEGISLATORS,

Amicus Curiae.

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 01-CV-419-EA)**

---

Teresa Stanton Collett, Houston, Texas, for Amicus Curiae in support of Defendants-Appellants (Elizabeth R. Sharrock, Assistant Attorney General, Oklahoma City, Oklahoma, for Defendants-Appellants on the briefs).

Bebe J. Anderson, Center for Reproductive Rights, New York, New York, for Plaintiff-Appellee (M.M. Hardwick, Tulsa, Oklahoma, with her on the briefs).

---

Before **EBEL**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

An Oklahoma statute makes abortion providers liable for any subsequent medical costs that may be required because of an abortion performed on a minor without parental consent or knowledge. Seeking to challenge the constitutionality of that statute, Nova Health Services ("Nova"), an abortion provider, brought this action for injunctive and declaratory relief against various officials who oversee certain public health care facilities in Oklahoma. These public officials have not

- 2 -

attempted to recover any medical costs from Nova under the challenged statute, although it is possible that they may seek to do so sometime in the future.

The district court held that there was a justiciable case or controversy between the parties and entered summary judgment against the defendants. The court issued declaratory and injunctive relief against the defendants, declaring that the Oklahoma statute imposed an unconstitutional burden on a woman's ability to obtain an abortion and was excessively vague.

We now hold that Nova lacked standing to bring this lawsuit because it has not shown that the injury it may have suffered due to the challenged Oklahoma law was caused by these particular defendants or that it would be redressed by a judgment against them. Indeed, nothing in the record distinguishes these defendants from any other party who might one day have the occasion to seek compensatory damages under the challenged statute as a civil plaintiff. A party may not attack a tort statute in federal court simply by naming as a defendant anyone who might someday have a cause of action under the challenged law.

Absent a genuine case or controversy between the parties, it is not constitutionally permissible for the federal courts to decide the issues presented.

Accordingly, we VACATE the order of the district court against the defendants in this appeal,[1] and DISMISS for lack of jurisdiction.

## BACKGROUND

Prior to June 2001, Nova offered abortions to minors without requiring that they first notify a parent. According to Nova, it "saw approximately one to two minors a month who had not consulted with a parent regarding their abortion." When a prospective minor patient stated that she had not talked to a parent about the abortion, Nova would encourage her to do so but would ultimately leave that decision to the patient. In "many cases," the minor eventually would choose to consult with a parent about the abortion.

In June 2001, Oklahoma enacted a law providing that:

Any person who performs an abortion on a minor without parental consent or knowledge shall be liable for the cost of any subsequent medical treatment such minor might require because of the abortion.

Okla. Stat. tit. 63, § 1-740. Although this law applies only to abortions performed on minors without parental "consent or knowledge," Nova responded by deciding that, in the future, it would require minors to produce in-person parental consent in order to obtain an abortion there. Since § 1-740 came into effect, Nova alleges

---

[1] Our opinion does not disturb the judgment against Mike Forgarty, a defendant below who did not appeal the judgment against him.

that it has "turn[ed] away young women who have valid and compelling reasons for not involving their parents in their decision." More specifically, Nova asserts that between July 2001 and January 2002 at least 31 minors declared that they would not bring a parent to the clinic to give consent.[2]

Less than a week after § 1-740 came into effect, Nova filed the instant lawsuit in federal district court seeking declaratory and injunctive relief. The four defendants in this appeal are Oklahoma public officials whose functions include overseeing certain state medical institutions. Nova alleged in its complaint that each of these institutions provide some form of medical treatment services, but the record does not detail the scope of their activities.

Dean Gandy is the Executive Director of the University Hospitals Authority, which oversees Oklahoma Memorial Hospital and Children's Hospital of Oklahoma. See Okla. Stat. tit. 63, § 3204. Terry L. Cline is the Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services, which manages state institutions designed to treat mental illness and drug and alcohol dependency. See Okla. Stat. tit. 43A, § 2-102. David L. Boren is the President of the University of Oklahoma, which includes the University of Oklahoma Health Science Center in Tulsa and the University of Oklahoma

---

[2] Nova admits that it is unclear how many, if any, of these women ultimately returned and obtained an abortion at Nova with parental consent.

Medical Center in Oklahoma City.  See Okla. Stat. tit. 70, §§ 3103, 3301.  James Halligan is the President of Oklahoma State University, which includes the Oklahoma State University College of Osteopathic Medicine and Surgery in Tulsa.  See Okla. Stat. tit. 70, §§ 3103, 3423.

Before the district court, Nova argued that § 1-740 is unconstitutional because it lacks an exception for abortions performed in medical emergencies, lacks a judicial bypass procedure, and is impermissibly vague.  The defendants argued, among other things, that Nova failed to demonstrate Article III standing.  The district court denied the defendants' motions to dismiss and motions for summary judgment, and granted Nova's motion for summary judgment.  The defendants listed above appealed.  For the reasons discussed below, we VACATE the judgments against these defendants and DISMISS for lack of standing.[3]

## ANALYSIS

As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a "case or controversy" that may be resolved by the federal courts.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

---

[3]  Mike Fogarty, the CEO and Administrator of the Oklahoma Health Care Authority, was also a defendant in the proceedings before the district court.  As noted in footnote 1, Fogarty has not appealed the judgment against him, and we therefore do not disturb that judgment.

First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Id. Second, there must be a causal connection between that injury and the challenged action of the defendant – the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. Id. Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury. Id. at 561.

We review questions of standing de novo. Utah v. Babbitt, 137 F.3d 1193, 1203 (10th Cir. 1998). As the party seeking to invoke federal jurisdiction, the plaintiff (here Nova) has the burden of establishing each of these three elements of Article III standing. See Lujan, 504 U.S. at 561. At the summary judgment stage, the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish each of these elements. Id. "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990).

Standing is determined as of the time the action is brought. See Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the

- 7 -

litigation.") (emphasis added); Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed."); Carr v. Alta Verde Indus., Inc., 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint."). Accordingly, the question we face is whether, as of June 2001, Nova faced a concrete and actual or imminent injury in fact that was caused by the defendants in this case and that was redressable by a favorable judicial order.[4]

A. Injury In Fact

As noted above, an injury in fact must be actual or imminent, not conjectural or hypothetical. Lujan, 504 U.S. at 560. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." Whitmore, 495 U.S. at 158. "An Article III injury ... must be more than a possibility. ... The threat of injury

---

[4] In Powder River Basin Res. Council v. Babbitt, we stated that a plaintiff had "lost standing" in the middle of a lawsuit. 54 F.3d 1477, 1484-85 (10th Cir. 1995). Although we used standing terminology, it seems that this was really a mootness question. Other courts have criticized Powder River for using standing terminology for what was really a mootness issue. See Becker v. FEC, 230 F.3d 381, 386 n.3 (1st Cir. 2000).

must be both real and immediate." Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1282 (10th Cir. 2002) (quotation omitted).

There is evidence in the record that, before § 1-740 came into effect, one or two minors each month would seek abortions at Nova without first consulting with a parent. In light of this past demand for abortions without parental involvement, Nova certainly could have expected to lose some business under its new policy demanding that minors obtain in-person parental consent. Further, there is evidence in the record that Nova actually turned away 31 minors who sought abortions between July 2001 and January 2002, after § 1-740 came into effect, because they refused to comply with Nova's new parental consent policy.

This evidence is enough, for summary judgment purposes, to support a conclusion that it was imminent at the time Nova brought this action that it would lose some minor patients. See Singleton v. Wulff, 428 U.S. 106, 113 (1976) (identifying abortion providers' injury as a direct financial impact on their practice); Doe v. Bolton, 410 U.S. 179, 188 (1973) (physicians may establish injury in fact when challenging abortion regulations by showing a "sufficiently direct threat of personal detriment"); Salem Inn, Inc. v. Frank, 522 F.2d 1045, 1047 n.10 (2d Cir. 1975) (standing established when plaintiff suffered economic loss due to compliance with a challenged ordinance).

Accordingly, Nova has sufficiently demonstrated at this stage of the litigation that it faced a concrete and imminent injury in fact. More specifically, as of June 2001, Nova faced an imminent likelihood that it would lose some minor patients seeking abortions.[5]

B. Causation

We next turn to whether Nova's injury in fact – the imminent threat that Nova would lose some minor patients seeking abortions – is fairly traceable to the defendants in this action. We hold that Nova has failed to demonstrate the necessary causal connection between its injury and these defendants.

To invoke federal jurisdiction, a plaintiff must show that his or her injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S.

_____

[5] Any past injury would not be redressable by the prospective relief Nova has sought in this case. See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief only ... it is insufficient for them to demonstrate only a past injury.").

Additionally, Nova's mere possible future exposure to civil liability under § 1-740 is too remote to constitute an actual or imminent injury in fact. Nova could only be subject to liability under § 1-740 if it performs an abortion on a minor without parental consent or knowledge, if that minor requires subsequent medical treatment because of that abortion, and if the minor does in fact obtain such treatment. Although such a chain of events would indeed be possible, any threat of this kind of injury is far from immediate.

at 560 (quotation omitted). As other courts have noted, Article III's causation requirement demands "something less than the concept of 'proximate cause.'" See Focus on the Family, 344 F.3d at 1273. Yet Article III does at least require a "but for" (or "factual") causal connection between the plaintiff's injury in fact and the defendant haled into federal court. See Community Nutrition Inst. v. Block, 698 F.2d 1239, 1247 (D.C. Cir. 1983) ("[A] plaintiff must show that the injury fairly can be traced to the challenged action ... A plaintiff need only make a reasonable showing that 'but for' defendant's action the alleged injury would not have occurred.") (quotation omitted) (rev'd on other grounds by 467 U.S. 340 (1984)); Pitt News v. Fisher, 215 F.3d 354, 360-61 (3d Cir. 2000) (finding Article III causation because "but for" the defendants' enforcement of the challenged law, plaintiff would not have suffered its injury); see also Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 74-78 (1978) (finding Article III standing based upon a "'but for' causal connection").

A defendant's conduct can be described as a but for cause of the plaintiff's injury if that injury would not have occurred absent that defendant's conduct. See Connor v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997); see also Restatement (Third) of Torts § 26, cmt. b (Tentative Draft No. 2) (2004) ("[A]n act is a factual cause [or but for cause] of an outcome if, in the absence of the act, the outcome would not have occurred."). Additionally, courts are willing to

- 11 -

recognize an act as the equivalent of a but for cause if it is independently sufficient to cause the plaintiff's injury, even if there was also some other sufficient cause. See Restatement (Third) of Torts, § 27, cmt. a (Tentative Draft No. 2) (2004).[6] We therefore must examine whether the conduct of the defendants in this action was a "but for cause" (or a "factual cause") of Nova's injury in fact.

As explained above, § 1-740 makes abortion providers liable for any subsequent medical costs necessitated by an abortion that was performed without parental consent or knowledge. Okla. Stat. tit. 63, § 1-740. In addition to allowing certain minors the right to recover their post-abortion medical expenses, it appears that the statute also enables suits by medical facilities that incur certain treatment costs that their patients fail to reimburse.[7]

---

[6] The classic example is when two fires join together to destroy property, and either would have been strong enough on its own to have caused the full extent of the damage. In such case, neither fire is a "but for" cause in a strict sense because the other fire would have wreaked the same havoc in its absence. Nevertheless, both fires are recognized to be a factual cause of the injury because "defendant[s] ... fully capable of causing plaintiff's harm should not escape liability merely because of the fortuity of another sufficient cause." See Restatement (Third) of Torts, § 27, cmt. a, c (Tentative Draft No. 2) (2004).

[7] Absent any narrowing construction that the Oklahoma courts may ultimately provide, we follow the most literal reading of § 1-740 and assume that this statute provides a cause of action to post-abortion health providers as well as to the woman herself for all post-abortion medical expenses incurred as a result of the abortion.

Nova has produced some evidence that the enactment of § 1-740 coerced it into requiring at least some sort of parental involvement prior to performing an abortion on a minor. In turn, there is evidence that Nova's new policy made it imminent that it would lose some minor patients.[8] However, the record is conspicuously silent with respect to how the particular defendants in this case might have affected Nova's decision to demand parental consent or Nova's resulting imminent lost patients injury, if at all.

---

[8] We note that, to a significant extent, Nova's injury was self-inflicted. Although § 1-740 applies only to abortions performed on minors without "parental consent or knowledge," Nova responded by requiring all minors to obtain in-person parental consent. Under the plain language of § 1-740, a parental knowledge requirement would have avoided prospective civil liability under the statute just as well. It would have also likely reduced Nova's threat of lost patients, at least to some degree. See Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 511 (1990) (recognizing that a parental consent requirement is more intrusive than a parental notification requirement).

"At some point, standing may be denied because the injury seems solely – or almost solely – attributable to the plaintiff. ... Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain." 13 Fed. Prac. & Proc. Juris. 2d § 3531.5, Causation (2004); see also Pennsylvania v. New Jersey, 426 U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."); Rodos v. Michaelson, 527 F.2d 582, 584-85 (1st Cir. 1975) (no standing when injury was caused by plaintiffs' unreasonable overreaction to an abortion statute); Petro-Chem Processing, Inc. v. EPA, 866 F.2d 433, 438 (D.C. Cir. 1989) (addressing the self-inflicted nature of an injury under the rubric of causation).

For other reasons, as explained below, Nova failed to demonstrate the required causal connection between its injury and the defendants in this action. Therefore, it is not necessary for us to address here whether Nova's overreaction to § 1-740 would have broken a properly established causal chain.

We hold that Nova has failed to show a but-for causal connection between its injury and these defendants. First, there is no evidence suggesting that, but for the actions of these defendants, Nova's likelihood of losing minor patients would have been any different. Nova submitted evidence that its refusal to offer abortions absent parental consent was a response to the enactment of § 1-740, not to any actions of these particular public officials. Additionally, nothing in the record suggests that the conduct of any of these defendants was enough, on its own, to cause Nova to stop offering abortions to minors without parental involvement. Therefore, it is at best merely speculative whether these defendants had any but-for causal impact on Nova's decision to require parental consent, or, consequently, on the imminent loss of patients that flowed from that decision. The plaintiff's burden of demonstrating causation is not satisfied when "[s]peculative inferences are necessary to connect [its] injury to the challenged actions." See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 45-46 (1976).

In other words, Nova has "confus[ed] the statute's immediate coercive effect on the plaintiff[] with any coercive effect that might be applied by the defendants." See Okpalobi v. Foster, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (emphasis in original) (holding that a state's governor and attorney general were not proper defendants when they had no power to enforce the challenged statute). Nothing in the record distinguishes these particular defendants from anyone else

- 14 -

who could possibly have a claim someday under § 1-740 (including, for example, minors themselves who might seek an abortion without parental notification and who might incur subsequent medical costs).

It may be true that these defendants potentially have the power to sue Nova under § 1-740, in the event that they happen to (1) incur medical costs (2) not reimbursed by the patient (3) that were required because of an abortion (4) performed by Nova (5) on a minor (6) without parental consent or knowledge. In this respect, § 1-740 is not unlike a multitude of other state tort laws under which these defendants might someday have a cause of action. Yet if these defendants' latent power to litigate were enough to support standing, anyone who might someday have a claim under § 1-740 could be summoned preemptively before the federal courts to defend the constitutionality of that statute. Article III does not allow a plaintiff who wishes to challenge state legislation to do so simply by naming as a defendant anyone who, under appropriate circumstances, might conceivably have an occasion to file suit under the relevant state law at some future date.

Furthermore, it makes no difference in this case that each of the defendants are public officials sued in their official capacities. In Wilson v. Stocker, we noted that an official who is charged with enforcing a state statute on behalf of the entire state is a proper defendant, so long as the plaintiff shows an appreciable

- 15 -

threat of injury flowing directly from the statute. 819 F.2d 943, 947 (10th Cir. 1987) (finding standing to sue the Oklahoma Attorney General to challenge a state criminal statute he was charged with enforcing). Other courts have reached similar conclusions. See Mobil Oil Corp. v. Attorney General of Va., 940 F.2d 73, 74-75, 76 n.2 (4th Cir. 1991) (finding standing to sue "the state's enforcement officer (the Attorney General)" who had authority to enforce a petroleum franchise law by seeking "stiff civil remed[ies]"); Corporate Health Ins., Inc. v. Texas Dep't of Ins., 215 F.3d 526, 532 (5th Cir. 2000) (finding standing to sue the state Attorney General, who could enforce the challenged act on the state's behalf through regulatory oversight responsibility, and noting that "[t]his is not a case in which private suits are the only means of enforcing [the statute]"), abrogated on other grounds by Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355 (2002).

In contrast, the defendants in this case are not charged with enforcing § 1-740 on Oklahoma's behalf. Rather, they are simply able to bring a civil suit under that statute (along with any other potentially relevant state law) in their proprietary capacities as directors of certain public medical institutions. Wilson deals only with suits against "state enforcement officers" to challenge the laws they execute as a representative of the state. See Wilson, 819 F.2d at 947. Wilson did not vest all public officials with standing to litigate the

constitutionality of any state legislation that <u>might be</u> the basis of a future lawsuit in which the state agency might be a civil litigant seeking compensatory damages.

In sum, although Nova has shown that it suffered an injury in fact, it has failed to demonstrate that its injury was caused by "the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court." <u>Cf.</u> <u>Lujan</u>, 504 U.S. at 560 (quotation omitted). Therefore, Article III does not permit us to decide the merits of Nova's claims.

### C. Redressability

Article III further requires that the plaintiff demonstrate a substantial likelihood that the relief requested will redress its injury in fact. <u>Ash Creek Mining Co. v. Lujan</u>, 969 F.2d 868, 875 (10th Cir. 1992). The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury. <u>Larson v. Valente</u>, 456 U.S. 228, 243 n.15 (1982).

We hold that Nova has failed to show that a judgment against the defendants in this action would likely redress its lost patients injury. As noted above, the record contains evidence that the enactment of § 1-740 created the imminent possibility that Nova would be reasonably coerced into turning away prospective minor patients who would not obtain parental consent. Yet the record

cannot support a conclusion that a judgment enjoining only these defendants from filing suit to recover damages under § 1-740 would redress that injury.

In this case, like many, "redressability and traceability overlap as two sides of a causation coin." See Cache Valley Elec. Co. v. Utah Dep't of Transp., 149 F.3d 1119, 1123 (10th Cir. 1998) (quotation omitted). Even if these defendants were enjoined from seeking damages against Nova under § 1-740, there would still be a multitude of other prospective litigants who could potentially sue Nova under that act. Most significantly, a judgment in Nova's favor would do nothing to prevent lawsuits against Nova by the minor patients who actually require subsequent medical care, or by any doctors or non-defendant hospitals and medical clinics who may treat them.

Consequently, nothing in the record suggests that a judgment against these defendants would materially reduce the coercive effect of § 1-740 that Nova claims prevented it from offering abortions to minors without parental consent. In turn, such a judgment would likely do nothing to prevent Nova from losing minor patients in the future, and thus would not be substantially likely to redress Nova's injury in fact. See Essence, 285 F.3d at 1280 (at the summary judgment stage, mere allegations of redressability are not enough to support standing).

Finally, we reject Nova's argument that a favorable declaratory judgment against these defendants would redress its injury by deterring other potential

litigants from relying on § 1-740, even in state court.  As an initial matter, Nova's argument is entirely speculative.  More fundamentally, it overlooks the principle that it must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly.  See Ash Creek Mining Co., 969 F.2d at 875 (the redressability inquiry looks to whether "the relief requested will redress the injury claimed") (emphasis added); Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) ("[W]hat makes a declaratory judgment action 'a proper judicial resolution of a 'case or controversy' rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'") (superceded by statute on other grounds) (emphasis added) (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)).  "If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will always exist.  Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." Franklin v. Massachusetts, 505 U.S. 788, 825 (1992) (Scalia, J., concurring) (emphasis omitted).[9]

---

[9]  The Supreme Court's decisions in Franklin v. Massachusetts, 505 U.S. 788 (1992) (plurality) and Utah v. Evans, 536 U.S. 452 (2002) are not to the

(continued...)

For these reasons, we hold that a judgment against the defendants in this action would not be substantially likely to redress Nova's lost patients injury.

**CONCLUSION**

Article III's standing requirements guarantee that both plaintiffs and defendants have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." See Duke Power Co., 438 U.S. at 72 (quotation omitted).

Our decision that Nova's injury is not fairly traceable to the defendants in this action and not likely redressable by a judgment against these defendants

---

[9](...continued)
contrary. In those cases, the Court held that judgments against the Secretary of Commerce requiring issuance of a modified census report would likely redress certain apportionment-related injuries, even though it ultimately was the President's duty to transmit apportionment results to Congress. Franklin, 505 U.S. at 800, 803; Evans, 536 U.S. at 463-64. As the Court explained in Evans, redress is likely under such circumstances because a court could compel the Secretary to substitute a new census report for the old one, and consequent apportionment-related steps would be purely mechanical. Evans, 536 U.S. at 463-64. "[I]n terms of our 'standing' precedent, the courts would have ordered a change in a legal status (that of the 'report'), and the practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief." Id. at 464; see also id. at 461. In contrast, there is no relationship between these defendants and the myriad of other parties who might assert claims against Nova under § 1-740 and nothing in the record to suggest any significant likelihood that other potential litigants would consider themselves bound by a judgment to which they were not parties.

reflects this fundamental policy. The incentives of these defendants – hospital directors and university administrators – to defend a politically divisive abortion statute is not particularly strong, at least at the present time when these defendants have no actual or imminent claims against Nova under the statute. Article III sensibly requires the federal courts to refrain from determining the validity of that legislation until the issue reaches us as part of a genuine case or controversy between adverse parties – i.e., in a case presenting a claim of concrete and actual or imminent injury traceable to the named defendants which is redressable by the authority of a judgment against those defendants. No such case or controversy is presented in this litigation.

We VACATE the judgment of the district court against the defendants in this appeal, and DISMISS for lack of standing.

No. 02-5094, <u>Nova Health Systems v. Gandy</u>

**BRISCOE,** Circuit Judge, concurring & dissenting:

I concur in the majority's conclusion that Nova has failed to demonstrate Article III standing for its claim seeking injunctive relief. I respectfully dissent, however, from the majority's conclusion that Nova lacks standing to pursue its claim for declaratory relief. In my view, Nova has shown that the conduct of these defendants is causally connected to Nova's injury and, further, that our declaring § 1-740 unconstitutional would redress its injuries.

To establish Article III standing, a litigant must show it has suffered an injury-in-fact, that the injury is fairly traceable to the defendant's allegedly unlawful conduct, and that the injury is likely to be redressed by the requested relief. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). Here, as the majority correctly concludes, it is clear Nova has demonstrated an injury-in-fact ("Nova faced an imminent likelihood that it would lose some minor patients seeking abortions." Maj. Op. at 10.).

The majority correctly states that, to prove causation, a plaintiff must show his or her injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." <u>Lujan</u>, 504 U.S. at 560. However, the majority applies a heightened standard to determine if Nova has established causation, stating, "Article III does at least

- 1 -

require a 'but for' (or 'factual') causal connection between the plaintiff's injury in fact and the defendant haled into federal court." Maj. Op. at 11. The majority concludes Nova cannot establish causation because Nova is unable to show that, "but for the actions of these defendants," it would have continued providing abortions to minors. Id. at 13. Further, the majority views Nova's suing of state officials in their official capacities as irrelevant to the causation analysis because § 1-740 does not explicitly charge these defendants with enforcement of § 1-740. The majority reasons that, since these defendants are not responsible for enforcing § 1-740, Nova's injuries are not fairly traceable to them.

I find no support for the majority's conclusion that Nova must show that "but for the actions of these defendants," Nova's injuries would not have occurred.[1] The reason this conclusion lacks support is apparent. In a case such as this where the plaintiff seeks pre-enforcement review of a statute's

_____

[1] The majority cites Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 74-78 (1978), as support. I do not read Duke Power as requiring a plaintiff to prove a defendant was the "but for cause" of the plaintiff's injury, but rather as requiring that plaintiffs prove a "fairly traceable causal connection." Id. at 72. Any reference the Court made in Duke Power to a "but for" test was only a statement of the Court's agreement with the district court's factual findings and not a holding by the Court. Additionally, it is noteworthy that the Court has not applied a "but for" test in subsequent standing cases. See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000); Franklin v. Massachusetts, 505 U.S. 788 (1992); Lujan, 504 U.S. at 561. Similarly, I have found no case from our court which requires that a plaintiff show a "but for" causal connection between the asserted injury and the defendant.

constitutionality, it is often the case that the defendant has not enforced (or even threatened to enforce) the statute. As this court explained in <u>Wilson v. Stocker</u>, 819 F.2d 943, 947 (10th Cir. 1987), the lack of enforcement alone does not prevent a plaintiff from proving causation.

> [T]he Supreme Court has often found a case or controversy between a plaintiff challenging the constitutionality of a statute and an enforcement official who has made no attempt to prosecute the plaintiff under the law at issue. In <u>Doe v. Bolton</u>, 410 U.S. 179 (1973), the Court found a justiciable controversy between doctors subject to prosecution under criminal abortion statutes and the state attorney general, "despite the fact that the record does not disclose that any one of [the doctors] has been prosecuted, or threatened with prosecution." . . . [I]n <u>Diamond v. Charles</u>, 476 U.S. 54 (1986), the Court stated that "the conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III." <u>Id.</u>
>     The legal principle underlying these decisions is the familiar doctrine that "[a] suit against a state officer in his official capacity is, of course, a suit against the State." Thus a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of injury.

<u>Wilson</u>, 819 F.2d at 946-47 (internal citations omitted). To require that a plaintiff seeking to prove causation must first show that the defendant was the "but for" cause of the plaintiff's injury abandons this line of cases, which directly address standing in the context of declaratory judgment actions.

I also disagree with the majority's conclusion that these defendants are somehow improper defendants because they are not directly charged with

enforcement of the statute. Nova seeks declaratory relief. As the majority correctly notes, "a plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest *to a state enforcement officer sued in his representative capacity* to create a substantial controversy *when . . . the plaintiff shows an appreciable threat of injury flowing directly from the statute*." Id. at 947 (emphasis added); see also Planned Parenthood v. Wasden, 376 F.3d 908, 919 (9th Cir. 2004) (noting fact that defendants attorney general and county prosecutor were empowered to enforce Idaho parental consent statute was sufficient to establish causation); Planned Parenthood v. Farmer, 220 F.3d 127, 147 (3d Cir. 2000) (noting because Pennsylvania's partial birth abortion ban was "so vague as to be impervious to a readily susceptible narrowing construction, [and thus] effectuat[ed] a ban on the conventional types of abortions," the act by its existence presented an imminent injury which was more than fairly traceable to the state's potential enforcement of the act). In this case, Nova claims, and the majority agrees, that the statute's mere existence presents an "appreciable threat of injury" based on the fact minors will not obtain abortions from Nova as a result of § 1-740. Therefore, as I read Wilson, whether Nova has established its injury is causally related to these defendants sued in their official capacities turns on whether § 1-740 authorizes these defendants to sue Nova on behalf of the state.

Section 1-740 provides:  "Any person who performs an abortion on a minor without parental consent or knowledge shall be liable for the cost of any subsequent medical treatment such minor might require because of the abortion." Okla. Stat. Ann. tit. 63, § 1-740.  On its face, the statute creates liability for an abortion provider who performs an abortion on a minor without parental consent for any subsequent medical treatment the minor may require because of the abortion, but it places no limitations on the class of potential plaintiffs that may sue abortion providers to recover those medical expenses.  Thus, unlike the statutes at issue in Hope Clinic v. Ryan, 249 F.3d 603 (7th Cir. 2001) (limiting right to sue to maternal grandparents of aborted fetus), and Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001) (limiting right to sue to mother of aborted fetus), § 1-740 does not provide a remedy for only private individuals.  Similarly, unlike the statute at issue in Wasden (establishing civil and criminal penalties for abortion providers who perform abortions without parental consent), and Farmer (instituting civil fines for abortion providers who perform partial birth abortions), § 1-740 does not provide a remedy enforceable by only public entities.  Rather, § 1-740 permits both public and private entities to file suit.  Section 1-740 permits *anyone* who pays for "subsequent medical treatment" – whether that person or entity is the State of Oklahoma or the grandmother of an aborted fetus – to sue an abortion provider.  I read § 1-740 as authorizing *any state official* to sue an

- 5 -

abortion provider *on behalf of the state* to recover for a minor's subsequent medical expenses.

Here, Nova seeks declaratory relief against four state officials sued in their official capacities, each of whom is authorized by § 1-740 to sue Nova for costs the State of Oklahoma incurs on behalf of minors who obtain abortions from Nova without parental consent. Nova decided to stop providing abortions to minors based on its fear that Oklahoma state officials, acting in their official capacities, would attempt to recover under § 1-740. Because Nova's injury-in-fact is fairly traceable to its fear that these defendants might enforce the statute, I conclude Nova has sufficiently demonstrated causation vis-a′-vis these defendants.

To establish redressability, a plaintiff must show it is likely that a favorable court decision will redress the injury to the plaintiff. See Lujan, 504 U.S. at 560. Nova seeks a declaratory judgment, stating § 1-740 is unconstitutional because it is facially vague. The majority reasons that a favorable declaratory judgment will not redress Nova's injuries because, even if we declare § 1-740 unconstitutional, that declaration is only valid against these four defendants. Therefore, the majority concludes Nova lacks standing because it is unable to obtain a declaration as to the statute's constitutionality against every potential party that might use § 1-740 to sue Nova. I disagree.

A plaintiff seeking declaratory relief establishes redressability if the practical consequence of a declaration "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." Utah v. Evans, 536 U.S. 452, 464 (2002); see also Franklin v. Massachusetts, 505 U.S. 788, 803 (1992) (stating "we may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination"); Duke Power, 438 U.S. at 75 n.20 ("Our recent cases have required no more than a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed."). As regards the present case, we may assume future parties that would sue under § 1-740 "will give full credence" to a decision by this court that the statute is unconstitutional. Roe v. Wade, 410 U.S. 113, 166 (1973) (refusing to address propriety of injunctive relief on basis that declaratory relief sufficiently redressed plaintiffs' injury).

Nova has been injured by the fact that, as a result of enactment of § 1-740, it has faced an imminent likelihood that it would lose some patients who are minors seeking abortions. The relief Nova requests is a declaration that § 1-740 is unconstitutional because it is so vague that it violates due process. If we

- 7 -

declare § 1-740 unconstitutional, there is a substantial likelihood that the precedential value of our opinion will prevent future parties from attempting to recover under § 1-740. Nova will be able to offer abortions to minors without the fear that parties will use § 1-740 to sue Nova. Thus, the declaration Nova requests sufficiently redresses Nova's injury by granting it a substantial basis for confidence in the legality of its conduct. See Roe, 410 U.S. at 166.

Because Nova has demonstrated an injury-in-fact, causation, and redressability, I conclude Nova has standing in its individual capacity to sue defendants Gandy, Cline, Halligan, and Boren.[2] I would proceed to address defendants' claim that they are immune from suit under the Eleventh Amendment and, if defendants were found not to be immune, to address the merits of Nova's claim.[3]

---

[2] Because I conclude Nova has standing to sue defendants in its individual capacity, I do not reach the issue of whether Nova has third-party standing to sue on behalf of its patients. The majority's dismissal of Nova's claims for lack of standing fails to address this asserted ground for standing.

[3] I share the majority's concern that some of the defendants might be improper insofar as they are not likely to enforce § 1-740. However, given the statute's unusually broad language, it is not our task to determine as part of the standing analysis whether the defendant state officials actually would enforce the act. To the extent the defendants here are unlikely to enforce § 1-740, I would address that issue as part of the Eleventh Amendment analysis.