**D.G. by Next Friend G. Gail STRICK-LIN, et al., for themselves and those similarly situated, Plaintiffs,**

v.

**C. Brad HENRY, in his official capacity as Governor of the State of Oklahoma, et al., Defendants.**

**Case No. 08–CV–074–GKF–FHM.**

United States District Court,
N.D. Oklahoma.

Dec. 11, 2008.

Andrew Belkin Bauer, Carly Henek, Mark A. Beckman, Phillip A. Geraci, Rose Nadine Fontaine, Kaye Scholer LLP, Ira P. Lustbader, Jeremiah Lee Frei–Pearson, Marcia Robinson Lowry, William Kapell, Yasmin Grewal–Kok, Children's Rights, New York, NY, Bruce W. Day, Joe Earl Edwards, Day Edwards Propester & Christensen, Oklahoma City, OK, Frederic Dorwart, Paul Demuro, Frederic Dorwart Lawyers, R. Thomas Seymour, Scott Alan Graham, Seymour & Graham LLP, Tulsa, OK, for Plaintiffs.

Catherine Ann O'Leary, Department of Human Services, Donald Mitchell Bingham, Donna Marie De Simone, Holly M. Hillerman, Riggs Abney Neal Turpen Orbison & Lewis, Tulsa, OK, Joseph W. Strealy, Richard Weldon Freeman, Jr., Richard Alan Resetaritz, Department of Human Services, Robert Allen Nance, Stephen Louis Cortes, Thomas Martin Askew, Melvin Curtis Hall, Robert P. Skeith, Riggs Abney Neal Turpen Orbison & Lewis, Oklahoma City, OK, for Defendants.

### *OPINION AND ORDER*

GREGORY K. FRIZZELL, District Judge.

This matter comes before the court on defendant Governor C. Brad Henry's Special Appearance and Motion to Dismiss [Doc. No. 58]. Defendant asserts the case should be dismissed against him pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because plaintiffs do not have standing with respect to claims against him and therefore he is not a proper defendant. Alternatively, he seeks dismissal of the entire case on the grounds that the next friends who are pursuing these claims on behalf of the named plaintiffs lack capacity to do so. For the reasons set forth below, the court finds the suit should be dismissed with respect to him.

### Background

This 42 U.S.C. § 1983 action for alleged constitutional and statutory violations was brought by nine Named Plaintiffs in foster care in Oklahoma, on behalf of themselves and the more than 10,000 similarly situat-

ed children who have been removed from their homes by the State of Oklahoma. Plaintiffs have alleged that the Oklahoma Department of Human Services ("DHS"), which has custody of the children, has a fundamental duty to provide for the children's safety and care. Plaintiffs contend DHS has failed to provide safe and adequate living situations, services for the children and adequate monitoring of their safety.

Plaintiffs named as defendants the Governor of the State of Oklahoma; all nine members of the Oklahoma Commission for Human Services ("OCHS"), the body responsible for formulating the policies and adopting the rules and regulations for the administration of DHS; and the director of DHS, each in his or her official capacity. They allege defendants' actions violate their Fourteenth Amendment right to substantive due process; liberty and privacy interests and associational rights conferred by the First, Ninth and Fourteenth Amendments; the Federal Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 621 *et seq.*; federally and state-created liberty or property rights; and obligations under Oklahoma's State Plan contracts with the government. Plaintiffs seek declaratory and prospective injunctive relief to "permanently enjoin defendants from subjecting Plaintiff Children to practices that violate their rights." [Doc. No. 2, ¶ 255d].

Plaintiffs' basis for naming the Governor as a defendant is set out in Paragraph 31 of the Complaint:

Defendant C. Brad Henry is the Governor of Oklahoma and is sued in his official capacity. Pursuant to Article VI, Section 8 of the Constitution of Oklahoma, the executive power of the State is vested in the Governor. Pursuant to that Section, the Governor is responsible for ensuring that all executive departments and agencies within the state, in-cluding DHS, faithfully executive and comply with applicable federal and state law. Pursuant to Article XXV, Section 3 of the Constitution of Oklahoma, the Governor has the power to appoint all nine members of the Oklahoma Commission for Human Services. Governor Henry maintains his principal place of business at the Governor's Office, State Capitol Building, 2300 N. Lincoln Boulevard, Room 212, Oklahoma City, OK 73105.

[*Id.,* ¶ 31].

### Analysis

The Eleventh Amendment to the Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

The plain terms of the Eleventh Amendment have been "much embroidered." *Hill v. Kemp,* 478 F.3d 1236, 1255 (10th Cir.2007). The Supreme Court has instructed that the amendment should be read to preclude suits by a citizen against its own sovereign state and suits brought by individuals against state officials acting in their official capacities. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Hill, supra; Harris v. Owens,* 264 F.3d 1282, 1289 (10th Cir.2001).

The Supreme Court has, however, issued a series of rulings setting out exceptions to the scope of *Hans.* Here, the pertinent exception is *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The court in *Ex parte Young* held that the Eleventh Amendment generally will not operate to bar suits so long as they seek only declaratory and injunctive relief rather than monetary damages and are aimed

against state officers acting in their official capacities rather than against the state itself.

■ In *Ex parte Young,* the court held, "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state and thereby attempting to make the state a party." *Id.* at 157, 28 S.Ct. 441.

■ Plaintiffs argue that under *Luckey v. Harris,* 860 F.2d 1012, 1015–16 (11th Cir.1988), they need not allege or show the Governor personally committed any of the alleged acts in order for him to be a proper defendant. Rather, they contend, it is sufficient that they show "some connection" between him and the conduct at issue. Plaintiffs assert that numerous connections satisfy this requirement. In general, the connections are:

- **State Plan**—The governor signs the written certification certifying DHS has authority to submit the State Plan under Title IV–E of the Social Security Act; he or his designee is required to review the State Plan under 45 C.F.R. § 1356.20(d)(2). [Doc. 2, ¶¶ 253–254].

- **Appointment of State Officials**—the Governor has appointed Hendrick, the current Director of DHS, as Secretary of Human Services; all nine members of the Oklahoma Commission on Human Services, as well as the chairman of the commission; and all 21 members of the Postadjudication Advisory Board, which makes recommendations to state officials regarding children's services and works with public and private agencies on foster care issues. [Doc. No. 2, ¶¶ 31–32; Doc. No. 82, pp. 6–8].

- **Governor's Task Force on Children in Custody**—This task force presented a report to the Governor in June 2001 that highlighted numerous problems in state foster care. None of the deficiencies referenced in the report has been corrected. [Doc. No. 2, ¶¶ 60, 128, 139, 142].

- **Responsibility to Enforce Laws**—Article VI § 8 of the Oklahoma Constitution gives the Governor authority to "cause the laws of the State to be faithfully executed," [Doc. No. 2, ¶ 31].

- **Special Sessions**—Article VI § 7 of the state Constitution gives the Governor authority to call special sessions of the legislature on topics he designates. [Doc. No. 82, p. 8].

- **"Direct and Indirect Control"**—The Governor and other defendants "directly and indirectly control and are responsible for" the administration of foster care in Oklahoma and the policies and practices of DHS. [Doc. No. 2, ¶¶ 1, 5].

The court is not convinced, however, that these allegations suffice to meet the requirements of *Ex parte Young.* Plaintiffs attack the administration of the state's foster care system by DHS. It is true, as plaintiffs assert, that Article VI, § 8 of the Oklahoma Constitution vests executive power in the Governor. Additionally, under Article XXV, § 3, the Governor has the power to appoint members of the OCHS and to name its chairman. However, the Governor is in no sense responsible for actually administering the foster care system. Indeed, he is two steps removed from this responsibility. Under Article XXV, §§ 3–4 of the Oklahoma Constitution, the OCHS controls and sets policy and rules for DHS and appoints the director of DHS. The DHS director is responsible for carrying out the duties of the department subject to approval by the

OCHS. Art. XXV, § 4. Thus, DHS and its director have direct responsibility for administering the foster care system under the supervision of OCHS. To accept plaintiffs' view that the Governor is a proper defendant here simply because he is the head of the executive branch of Oklahoma would abrogate the Eleventh Amendment bar to suits against states. Applying this approach, the Governor would be subject to inclusion in any and all civil rights action for injunctive relief against state agencies and departments. As the Supreme Court stated in *Ex parte Young*:

> That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistent with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

209 U.S. at 157, 28 S.Ct. 441.

The court finds instructive a recent ruling by The Honorable Claire V. Eagan in another § 1983 case, *Hill v. Kemp*, 2008 WL 822070 (N.D.Okla.). In that case, the Oklahoma Religious Coalition for Reproductive Choice Education Fund ("ORC") challenged the constitutionality of statutes involving distribution of certain monies raised from the sale of speciality license plates. Oklahoma law provides for the sale of speciality license plates bearing the phrase "Choose Life." 47 O.S. § 1135.5(B)(23). Under 47 O.S. § 1104.6(B), a portion of the money collected from sale of those plates is directed to a revolving fund designated the "Choose Life Assistance Program" and administered by DHS. The money is distributed on a pro rata basis to nonprofit organizations that provide services to the community that include counseling and meeting the physical needs of pregnant women who are committed to placing their children for adoption. *Id.* Under § 1104.6(C)(4), in order to receive disbursements from the fund, an applicant organization must submit an affidavit verifying, among other things, that the organization "is not involved or associated with any abortion activities, including counseling for or referrals to abortion clinics, providing medical abortion-related procedures, or pro-abortion advertising." ORC, an organization which provides family planning services including both adoption and abortion related counseling, referrals and financial assistance, applied for funding three years in a row. Each time, its application was rejected. The ORC challenged the constitutionality of the eligibility criteria set for in § 1104.6(C)(4) and (D) and sought injunctive relief against these statutory conditions. The lawsuit named as defendants the Governor, the director of the Oklahoma Tax Commission ("OTC"), all members of the OTC, and the director of DHS. Chief Judge Eagan, in addressing defendants' Rule 12(b)(1) motions to dismiss, approached the issue of whether they were proper defendants by applying a standing analysis. *Id.*

As articulated by Chief Judge Eagan in *Hill* at *4, Article III of the Constitution restricts federal courts to the adjudication of "cases or controversies." U.S. Const. Art III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir.2004). To establish Article III standing, a plaintiff must allege that 1) he or she has suffered and "injury in fact" that is (a) concrete and particularized and (b) actual of imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will

be redressed by the relief requested. *Id.* at 1283. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In *Hill,* Chief Judge Eagan found ORC had failed to establish that a judgment against the governor and OTC officials would redress its injury. *Id.* at *5, citing *Nova Health Sys. v. Gandy,* 416 F.3d 1149, 1159 (10th Cir.2005). This was because DHS, rather than the OTC or the governor, controlled disbursements from the fund at issue. *Id.* at *4–*5. The court held that the DHS director, however, should remain as a defendant in the action. *Id.* at *6.

Here, as in *Hill,* plaintiffs have failed to show the alleged injury will be redressed by the relief requested, at least as against this defendant. Plaintiffs contend that DHS policies and procedures violate their rights. The Governor does not control DHS. The director of DHS controls DHS and the OCHS has authority over the agency's policies and procedures. Thus, while injunctive relief directed at members of the OCHS and the director of DHS might redress the alleged injury, an injunction against the Governor would be essentially meaningless.

Plaintiffs lack standing to assert their claims against this defendant. Therefore, dismissal pursuant to Rule 12(b)(1) is appropriate.

### Conclusion

For the reasons set forth above, defendant Governor C. Brad Henry's Motion to Dismiss [Doc. No. 58] is hereby GRANTED. This case is dismissed with respect to that defendant.