KELLY, Circuit Judge,
concurring in part.
I concur in Judge Lucero’s opinion with the exception of parts V(B)(2) and (4) concluding that Section 7(B) is conflict preempted. As noted by Judge Lucero, the panel majority, albeit for different reasons, reverses the district court’s grant of a preliminary injunction against the enforcement of Section 7(B). My reasoning *772 is as follows. Even accepting that federal regulation of immigration and work-authorization verification is now the norm, the federal government’s encouragement of a web-based system to reduce the employment of unauthorized aliens cannot be overlooked — including requiring the system for federal contractors. See 73 Fed. Reg. 67,704 (2008). Though E-Verify is voluntary (as of yet) at the national level, it is not reasonable to assume that a mandatory program choice for state public contractors conflicts with Congressional purpose. In my view, Congress obviously foresaw the potential for increased use of technology. See Chicanos Por La Causa, Inc. v. Napolitano, 558 F.3d 856, 866-67 (9th Cir.2009). To hold that the State is preempted from requiring such use in these circumstances reads too much into the federal government’s provision of choice. After all, choice is not an end in itself and no evidence suggests that federal standards concerning immigration and employment-verification will be compromised by E-Verify.
HARTZ, Circuit Judge,
concurring and dissenting:
My thoughts with respect to Plaintiffs’ challenges to Sections 7(B), 7(C), and 9 of H. B. 1804 are somewhat different from those of the others on this panel. In my view, Plaintiffs lack standing to seek an injunction against the Attorney General with respect to Section 7(B), and their claim with respect to Section 9 is barred by the Tax Injunction Act. I concur with the other members of the panel in affirming the injunction against enforcement of Section 7(C), but my grounds are narrower than theirs.
I. SECTION 7(B)
I respectfully dissent from the majority opinion’s holding that the district court had jurisdiction to enjoin the Attorney General from enforcing Okla. Stat. tit. 25, § 1313(B) (Section 7(B) of H.B. 1804). In my view, the Plaintiffs did not have standing to bring their claim against the Attorney General.
As recently stated by the Supreme Court,
To seek injunctive relief, a plaintiff must show that he is under threat of suffering “injury in fact” that is concrete and particularized; this threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.
Summers v. Earth Island Inst., — U.S. -, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009). What is missing in this case is that the Plaintiffs have not shown that they face an actual and imminent threat of injury traceable to actions of the Attorney General with regard to § 1313(B).
Section 1313(B) states as follows:
1. After July 1, 2008, no public employer shall enter into a contract for the physical performance of services within this state unless the contractor registers and participates in the Status Verification System to verify the work eligibility status of all new employees.
2. After July 1, 2008, no contractor or subcontractor who enters into a contract with a public employer shall enter into such a contract or subcontract in connection with the physical performance of services within this state unless the contractor or subcontractor registers and participates in the Status Verification System to verify information of all new employees.
3. The provisions of this subsection shall not apply to any contracts entered into prior to the effective date of this *773 section even though such contracts may involve the physical performance of services within this state after July 1, 2008.
This statute does not require or provide for any enforcement by the Attorney General. (The Attorney General may have duties as a “public employer,” but the Plaintiffs are not seeking relief from him in that role.) The Plaintiffs’ sole claim is that the Attorney General may have a role under § 1313(B) because of his duties in reviewing and approving state contracts and his duty to enforce state law (presumably by bringing suit to make sure that public employers comply with the statute). As for the alleged duty to review and approve state contracts, the Plaintiffs have presented no evidence that such review and approval is part of the work of the Attorney General. The statutes cited by the Plaintiffs do no more than authorize state agencies to request assistance from the Attorney General in preparing contracts, see Okla. Stat. tit. 74, § 18b(A)(7) (2001), and authorize the Attorney General to enforce state law, see id. §§ 18b(A)(3), (9), (10), (16). And the Attorney General represents to this court that review of state-agency contracts by the Attorney General does not “occur as a matter of practice in Oklahoma.” Att’y Gen. Suppl. Br. at 3 (May 22, 2009). Consequently, the substance of an injunction against the Attorney General would be solely to enjoin him from bringing suit to require other public officials to comply with § 1313(B).
The Plaintiffs’ standing thus depends on their showing an actual and imminent threat that the Attorney General will bring or threaten suit to require public employers to comply with § 1313(B). I am aware of no such showing. Even if one could assume that the Attorney General has a particular interest in that statute and would be willing if not eager to take action against public employers who fail to comply with it, there is nothing in the record to suggest that any public employer is recalcitrant. It is pure speculation to believe that action by the Attorney General with respect to § 1313(B) is imminent, or that any imminent injury to be suffered by the Plaintiffs’ members from enforcement of § 1313(B) is fairly traceable to the Attorney General.
This is not a case in which the Attorney General is sued to make sure that all the bases are covered. For example, someone fearful of being improperly prosecuted under a criminal statute may sue the Attorney General as well as the district attorney, because the Attorney General may step in if the district attorney is precluded from doing so. In the circumstances before us in this case, however, if a public employer were enjoined from enforcing § 1313(B) because it is invalid, I would not expect the Attorney General to bring suit against the public employer to enforce that section.
We have previously held that a plaintiff lacked standing to bring a claim because the wrong defendant was selected. In Nova Health Systems v. Gandy, 416 F.3d 1149, 1154 (10th Cir.2005), the plaintiffs challenged an Oklahoma statute providing that “[a]ny person who performs an abortion on a minor without parental consent or knowledge shall be liable for the cost of any subsequent medical treatment such minor might require because of the abortion.” Okla. Stat. tit. 63, § 1-740. Under that law, suit to recoup such medical costs could be brought by minors or by “medical facilities that incur certain treatment costs that their patients fail to reimburse.” Nova Health, 416 F.3d at 1156. The plaintiff was an abortion provider, and the defendants were officials of state-run medical institutions who, in theory, could bring suit under the law to recoup treatment costs. The plaintiff, we said, had shown an injury *774 in fact because the law created potential liability that discouraged the plaintiff from performing abortions absent parental consent, and there was evidence that a parental-consent policy would result in the loss of “some business.” Id. at 1155. We concluded, however, that the plaintiff could not fairly trace this injury to the named defendants. See id. at 1156-58. Although the defendant medical institutions could bring suit under the law, they could do so only if “they happen to (1) incur medical costs (2) not reimbursed by the patient (3) that were required because of an abortion (4) performed by [plaintiff] (5) on a minor (6) without parental consent or knowledge.” Id. at 1157. This speculative prospect was insufficient to support standing. See id. at 1157-58.
A decision by the Third Circuit is also instructive. 1st Westco Corporation v. School District of Philadelphia, 6 F.3d 108 (3d Cir.1993), concerned a Pennsylvania statute “mandat[ing] that only Pennsylvania residents may work on public school construction projects.” Id. at 111. An individual school district could “refuse payment of [a] contract price to [a] contractor’ ” who employed out-of-state labor. Id. at 113 (internal quotation marks omitted). A Pennsylvania school district invoked the law against Westco, a construction company that had employed New Jersey workers to renovate three of the district’s buildings. See id. at 111-12. Westco challenged the constitutionality of the residency requirement in federal court and obtained a favorable judgment against the school district, the Secretary of Education, and the Attorney General. See id. On appeal the Third Circuit ruled that there was “no case or controversy” between the Attorney General and Westco. Id. at 116. The court reasoned that the residency law charged the Pennsylvania school districts, not the Attorney General, with enforcing it. See id. at 113. The court acknowledged that the Attorney General had a “general duty to enforce the laws of the Commonwealth of Pennsylvania,” and that it was “theoretically possible” that he could “initiate[ ] suit against Westco’s interests.” Id. at 114. But because the record did not establish a “realistic likelihood” of such action, id., the court concluded that Westco lacked standing to sue the Attorney General, see id. at 114-16.
Following this authority, I would hold that the Plaintiffs lacked standing to bring their claim against the Attorney General. The record fails to show that the prospect of the Attorney General taking action to enforce Section 1313(B) is more than speculative. Because the district court lacked jurisdiction over that claim, we should reverse and remand for dismissal. I therefore concur in the reversal of the district court’s preliminary injunction against the enforcement of Section 1313(B).
II. SECTION 9
I respectfully dissent from the majority opinion’s holding that the district court had jurisdiction to enjoin the enforcement of Okla. Stat. tit. 25, § 2385.32 (§ 9 of H.B. 1804). In my view, such injunctive relief is barred by the Tax Injunction Act (the “TIA”), 28 U.S.C. § 1341. Federal law is clear that the TIA forbids injunctions against tax-withholding statutes. And § 2385.32 is such a statute; it requires withholding of income taxes from payments made to certain independent contractors and provides for enforcement of the requirement.
Okla. Stat. tit. 25, § 2385.32(A) states:
If an individual independent contractor, contracting for the physical performance of services in this state, fails to provide to the contracting entity documentation to verify the independent contractor’s *775 employment authorization, pursuant to the prohibition against the use of unauthorized alien labor through contract set forth in 8 U.S.C. § 1324a(a)(4), the contracting entity shall be required to withhold state income tax at the top marginal income tax rate as provided in Section 2355 of Title 68 of the Oklahoma Statutes as applied to compensation paid to such individual for the performance of such services within this state which exceeds the minimum amount of compensation the contracting entity is required to report as income on United States Internal Revenue Service Form 1099.
In other words, if one who hires an independent contractor cannot obtain verification of the contractor’s authorization to work in this country, the hirer must withhold income taxes from its payments to the contractor. Section 2385.32(B) makes the hirer liable for taxes that should have been withheld.
Although it may be rare for a government to require tax withholding from payments to independent contractors, it is not uncommon to require that taxes be withheld from payments other than wages to employees. For example, Oklahoma requires income-tax withholding from royalty payments to nonresidents. See Okla. Stat. tit. 25, § 2385.26. Royalty withholding serves the purpose of ensuring that nonresidents pay required Oklahoma income taxes. If Oklahoma is concerned that independent contractors, or certain subsets of independent contractors, are likely to evade payment of required state income tax, it can similarly require withholding of payments to those independent contractors to ensure that their income-tax obligations will be satisfied.
The TIA forbids injunctions against such withholding statutes. The TIA states:
The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
28 U.S.C. § 1341 (emphasis added). Withholding is a method for collection of taxes, and it cannot be enjoined even if the tax might be collected by other means. In United States v. American Friends Service Committee (AFSC), 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974) (per curiam), a district court had enjoined the government from enforcing the statute requiring the withholding of income taxes from the salaries of AFSC’s employees. (The employees wished to express their opposition to war by refusing to pay taxes.) The Supreme Court held that the district court’s injunction was barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a). The Anti-Injunction Act is the equivalent of the TIA for federal taxes. It states:
Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
26 U.S.C. § 7421(a). The Supreme Court explained:
[The employees] contend ... that since the District Court enjoined only one method of collection, and the Government is still free to assess and levy their taxes when due, the Act does not apply. But this contention ignores the plain wording of the Act which proscribes any “suit for the purpose of restraining the assessment or collection of any tax.” The District Court’s injunction against the collection of the tax by withholding enjoins the collection of the tax, and is *776 therefore contrary to the express language of the Anti-Injunction Act.
Am. Friends, 419 U.S. at 10, 95 S.Ct. 13.
The two published circuit-court opinions that have addressed state withholding statutes have held that the TIA likewise forbids injunctions against such statutes. See Int’l Lotto Fund v. Virginia State Lottery Dep’t, 20 F.3d 589, 591 (4th Cir.1994); Sipe v. Amerada Hess Corp., 689 F.2d 396, 402-03 (3d Cir.1982) (unemployment and disability withholding). I would follow the above authority and hold that the district court was deprived by the TIA of jurisdiction to enjoin the enforcement of Okla. Stat. tit. 25, § 2385.32. This is not to say that the statute can escape judicial scrutiny. The TIA does not bar a federal court from granting relief to one who has already paid a challenged state tax; and, as far as the TIA is concerned, a state court could enjoin enforcement of a state-court statute. The point is only that the district court lacked jurisdiction to consider the relief sought at this time.
The majority opinion makes what I believe to be two errors in its analysis. First, it ignores that what is collected under § 2385.32 is not some special assessment but income tax, pure and simple. Thus, if the withheld amount is greater than what the independent contractor actually owes in income taxes, the independent contractor can file an Oklahoma tax return and obtain a refund of the excess payment.
Second, the majority opinion improperly focuses on the motive for enactment of § 2385.32. The TIA is not concerned with why a state chooses to collect its taxes in a particular manner. After all, even if the tax itself is unconstitutional (because, say, of an improper purpose), the TIA forbids federal courts from enjoining collection of the tax. In any event, I question the majority opinion’s analysis of that motive. The opinion quotes selectively from § 2 of H.B. 104, which is in essence the preamble to the statute. Section 2 states in full:
The State of Oklahoma finds that illegal immigration is causing economic hardship and lawlessness in this state and that illegal immigration is encouraged when public agencies within this state provide public benefits without verifying immigration status. [2] The State of Oklahoma further finds that when illegal immigrants have been harbored and sheltered in this state and encouraged to reside in this state through the issuance of identification cards that are issued without verifying immigration status, these practices impede and obstruct the enforcement of federal immigration law, undermine the security of our borders, and impermissibly restrict the privileges and immunities of the citizens of Oklahoma. [3] Therefore, the people of the State of Oklahoma declare this it is a compelling public interest of this state to discourage illegal immigration by requiring all agencies within this state to fully cooperate with federal immigration authorities in the enforcement of federal immigration laws. [4] The State of Oklahoma also finds that other measures are necessary to ensure the integrity of various governmental programs and services.
(emphases added). As I read this section, the general comments regarding illegal immigration expressed in the first two sentences are to support the proposition in the third sentence that state agencies should cooperate with federal authorities to enforce federal immigration law. The sentence relevant to the withholding statute, however, is the final sentence, which states that “other measures are necessary to ensure the integrity of various governmental programs and services.” It is *777 therefore quite reasonable to infer that the purpose of the withholding statute is to protect the integrity of Oklahoma’s income-tax system by ensuring that unlawful immigrants acting as independent contractors pay Oklahoma income taxes, much as withholding on royalty payments to nonresidents ensures payment of taxes by nonresidents.
III. SECTION 7(C)
I agree with the majority opinion in affirming the injunction against the Human Rights Commission with respect to enforcement of § 7(C). The Plaintiffs have standing to seek the injunction; and § 7(C) is preempted by the IRCA because it provides for the imposition of civil sanctions for employing unauthorized aliens. I would not go as far as the majority opinion, however, in saying that reinstatement, back pay, costs, and attorney fees are civil sanctions within the meaning of that term in the IRCA. I would be inclined to agree with the Second Circuit opinion in Madeira v. Affordable Housing Foundation, Inc., 469 F.3d 219, 239-40 (2d Cir.2006), which held that compensatory relief does not come within the IRCA’s meaning of civil sanctions. Nevertheless, among the types of relief provided by Oklahoma for discriminatory practices (which include violations of § 7(C)) are civil penalties of up to $50,000 for a first violation and $100,000 for a second. See Okla. Stat. tit. 25, § 1506.6(B)(3). Perhaps some of § 7(C) could be saved by excluding those civil-penalty provisions from its reach; but the Defendants have not argued for such a result.