**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UTAH ASSOCIATION OF
COUNTIES, on behalf of its members,

    Plaintiff,

MOUNTAIN STATES LEGAL
FOUNDATION, on behalf of its
members,

    Plaintiff-Appellant,

v.

GEORGE W. BUSH, in his official
capacity as President of the United
States, UNITED STATES OF
AMERICA, JAMES L.
CONNAUGHTON, in his official
capacity as Chair of the Council on
Environmental Quality, GALE
NORTON, in her official capacity as
Secretary of the Interior, and
KATHLEEN CLARKE, Director of
the Bureau of Land Management,

    Defendants-Appellees,

SOUTHERN UTAH WILDERNESS
ALLIANCE, THE WILDERNESS
SOCIETY, GRAND CANYON
TRUST, ESCALANTE CANYON
OUTFITTERS, ESCALANTE'S
GRAND STAIRCASE B&B INN, and
BOULDER MOUNTAIN LODGE,

No. 04-4132

Defendants-Intervenors-
Appellees,

------------------------

STATE OF UTAH,

Amicus Curiae.

**Appeal from the United States District Court
for the District of Utah
(D.C. Nos. 2:97-CV-479 and 2:97-CV-863)**

Jayme Ritchie (William Perry Pendley and S. Amanda Koehler, with her on the briefs), Mountain States Legal Foundation, Lakewood, Colorado, for Plaintiff-Appellant.

Todd S. Kim, United States Department of Justice, Washington, D.C. (Thomas L. Sansonetti, Assistant Attorney General, Paul M. Warner, United States Attorney and Carlie Christensen, Assistant United States Attorney, District of Utah, Michael A. Gheleta and Ellen Durkee, Attorneys, United States Department of Justice, Washington, D.C., with him on the brief), for Defendants-Appellees.

Stephen H.M. Bloch, Southern Utah Wilderness Alliance, Salt Lake City, Utah (Heidi J. McIntosh, Southern Utah Wilderness Alliance, Salt Lake City, Utah, Richard A. Duncan, Craig S. Coleman and Sarah I. Wheelock, Faegre & Benson, Minneapolis, Minnesota, with him on the brief), for Defendants-Intervenors-Appellees.

J. Mark Ward, Assistant Attorney General and Mark L. Shurtleff, Utah Attorney General, filed a brief for amicus curiae State of Utah on behalf of appellant.

Before **KELLY**, **SEYMOUR**, and **EBEL**, Circuit Judges.

- 2 -

**EBEL**, Circuit Judge.

In this case, Mountain States Legal Foundation ("MSLF") challenges the legality of the 1996 creation of the Grand Staircase-Escalante National Monument in southern Utah. Because we conclude that MSLF lacked standing to bring this claim, we dismiss the appeal.

## I. BACKGROUND

### A. The Monument

On September 18, 1996, in the midst of his 1996 re-election campaign, President Clinton issued a Presidential Proclamation establishing the Grand Staircase-Escalante National Monument (the "Monument"), a set-aside of approximately 1.7 million acres of federal land in southern Utah. See Proclamation No. 6920, 61 Fed. Reg. 50,223 (Sept. 18, 1996). The Proclamation described the Monument area as a "geologic treasure" and an "outstanding biological resource" that includes "world class paleontological sites" and is "rich in human history." Id. at 50,223–224. Among the items to be protected in the Monument are "arches and natural bridges"; "remarkable specimens of petrified wood"; numerous types of "[e]xtremely significant fossils"; ancient Native American "rock art" and occupation sites; "trails, inscriptions, [and] ghost towns" from Mormon pioneers; "[f]ragile cryptobiotic crusts"; and "[o]ver 200 species of birds, including bald eagles and peregrine falcons." Id. at 50,223–225.

The proclamation claimed the authority to establish the Monument based on the Antiquities Act of 1906 ("Antiquities Act"), which provides:

> The President of the United States is authorized, in his discretion, to declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated upon the lands owned or controlled by the Government of the United States to be national monuments, and may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected.

Antiquities Act of 1906 § 2, 16 U.S.C. § 431 (2000); see Proclamation No. 6920, 61 Fed. Reg. at 50,225 (the President's declaration that the Monument is set aside "by the authority vested in me by section 2 of the [Antiquities Act]").

Establishment of the Monument generated intense criticism, including in some Congressional circles. Notably, the majority staff of the House Committee on Resources produced two reports critical of President Clinton's decision. See "Behind Closed Doors: The Abuse of Trust and Discretion in the Establishment of the Grand Staircase-Escalante National Monument." H.R. Rep. No. 105-D (Comm. Print 1997); "Monumental Abuse: The Clinton Administration's Campaign of Misinformation in the Establishment of the Grand Staircase-Escalante National Monument." H.R. Rep. No. 105-824 (Comm. Print 1998).[1]

_____

[1]The view expressed in Monumental Abuse was not unanimous; the minority Democratic Party members of the Committee on Resources issued a
(continued...)

Despite these and other criticisms of the Monument, since 1996 Congress has passed several pieces of legislation that relate to the Monument. For example, in the Automobile National Heritage Area Act, Pub. L. No. 105-355, 112 Stat. 3247 (1998), Congress modified the boundaries of the Monument to exclude certain Utah towns and to take in the "East Clark Bench" area. Id. §§ 201–02. Congress has also appropriated funds both for acquiring mineral rights within the Monument, see Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, app. C, § 601, 113 Stat. 1501 (1999), and for construction and the development of programs at the Monument. See, e.g., S. Rep. No. 106-99, at 14–15 (1999); S. Rep. No. 105-227, at 10, 13–14 (1998); H.R. Rep. No. 105-609, at 12 (1998).

**B. Procedural Background**

In June 1997, about nine months after the Monument was established, the Utah Association of Counties ("UAC") and the Utah Schools and Institutional Trust Lands Administration ("SITLA") each filed a complaint in Utah federal district court asserting that the creation of the Monument was illegal. See Utah Ass'n of Counties v. Bush, 316 F. Supp. 2d 1172, 1176 (D. Utah 2004). The

---

[1](...continued)
rebuttal response, supporting President Clinton's action. Dissenting Views: Staff Report on Grand Staircase-Escalante NM, at 1–3 (Oct. 9, 1998).

Appellant in this case, MSLF, filed a similar complaint in November 1997.[2] Id. The complaints named as defendants the President, the United States, and several federal officials and agencies (collectively, "Defendants"). The plaintiffs challenged the creation of the Monument on numerous grounds, claiming that: (1) the Antiquities Act is unconstitutional because it violates the delegation doctrine; (2) in designating the Monument, President Clinton acted *ultra vires* and in violation of the Property and Spending Clauses of the United States Constitution; (3) President Clinton violated the Antiquities Act by failing to designate "objects of historic or scientific interest" and failing to confine the Monument "to the smallest area compatible with the proper care and management of the objects to be protected"; (4) President Clinton violated the Wilderness Act by creating *de facto* wilderness, a power reserved to Congress; (5) President Clinton violated Executive Order 10355, which requires that land be withdrawn by the Secretary of the Interior, not the President; and (6) the Defendants violated the National Environmental Policy Act, the Federal Land Policy and Management Act, the Federal Advisory Committee Act, and the Anti-Deficiency Act in the creation of the Monument. See id. at 1176–77. Given the relatedness of the complaints, the actions by UAC, SITLA, and MSLF were soon consolidated;

_____

[2]The MSLF describes itself as "a voluntary, non-profit, public interest corporation . . . [that] is dedicated to individual liberty, the right to own and use property, limited government, and the free enterprise system."

however, SITLA eventually reached a settlement with Defendants and was dismissed as a plaintiff. See id. at 1176; The Utah Schools and Land Exchange Act of 1998, Pub. L. No. 105-335, 112 Stat. 3139 (1998) (Congress's ratification of the settlement). In a prior related appeal, we allowed several environmental groups and businesses located near the Monument to intervene as defendants in the consolidated action. See Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1256 (10th Cir. 2001).

In July 1998, Defendants filed a motion to dismiss or in the alternative for summary judgment, alleging, *inter alia*, that the district court lacked subject-matter jurisdiction to hear the case. Utah Ass'n of Counties, 316 F. Supp. 2d at 1177. Specifically, Defendants claimed that the case was not ripe, that the court had no judicial authority to review the President's action, and that MSLF lacked standing to challenge the Monument. Id. Both remaining plaintiffs (UAC and MSLF) opposed Defendants' motion and filed their own motions for summary judgment. Id.

In an April 19, 2004 order, the district court granted summary judgment for Defendants and denied the plaintiffs' summary judgment motions. Id. at 1200–01. As for Defendants' claim that MSLF lacked standing, the court stated:

> the United States concedes that UAC has standing, but insists MSLF does not. . . . Given th[e] relatively light burden [to show standing] at the present stage of the instant case and recognizing that many of the claims of UAC and MSLF are identical or similar, and in the interest of judicial economy the Court will not further address the standing

-7-

question in this Opinion. While not expressly finding that MSLF has standing to sue, the Court will address all of the parties' claims, including those advanced solely by MSLF.

Id. at 1185 n.6. Proceeding to the merits, the district court rejected all of UAC's and MSLF's challenges to the creation of the Monument. Id. at 1190–1200.

MSLF timely filed a notice of appeal; however, UAC — the only other remaining plaintiff — did not appeal the district court's decision.

## II. DISCUSSION

On appeal, MSLF asserts both that it had standing to bring its challenge and that the district court erred in granting summary judgment to Defendants on the merits of its claims.[3] We conclude that MSLF lacked standing to bring its action; therefore, we need not address its arguments on the merits.[4]

_____

[3]Although the plaintiffs' complaints asserted numerous challenges, on appeal MSLF challenges only the district court's conclusion that the Monument designation did not violate the Antiquities Act or the Wilderness Act.

[4]We note, however, that we have various other concerns with MSLF's claims. For example, the cause of action on which MSLF relies is not clear from its briefs. At oral argument, counsel for MSLF asserted for the first time that MSLF was relying on an implied private right of action under the Antiquities Act. Given our conclusion on standing, we need not decide whether such a right of action exists, although we note the strict standard established by the Supreme Court for implying rights of action. See Gonzaga Univ. v. Doe, 536 U.S. 273, 290 (2002) (stating that Congress must provide for an implied right of action "in clear and unambiguous terms"); id. at 286 ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under an implied right of action.").

## A.  Necessity of a Standing Analysis

Because the Defendants conceded below that UAC had standing, the district court declined "in the interest of judicial economy" to address the question of MSLF's standing.  Id. at 1185 n.6.  Nevertheless, MSLF's standing is a critical issue in this appeal because only MSLF has appealed the district court decision.

The requirement that a plaintiff have standing "is grounded in Article III of the U.S. Constitution, which restricts federal court adjudication to actual cases or controversies."  Utah v. Babbitt, 137 F.3d 1193, 1201 (10th Cir. 1998); see also San Juan County v. United States, 420 F.3d 1197, 1203 (10th Cir. 2005) ("Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.'  Standing to sue . . . is an aspect of the case-or-controversy requirement.") (quotations, citations omitted).  We have noted that "[s]tanding to invoke the power of the federal courts is not a mere technical hoop through which every plaintiff must pass, but rather is 'a part of the basic charter promulgated by the Framers of the Constitution.'"  Babbitt, 137 F.3d at 1202 (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 476 (1982)).  Where, as here, a plaintiff challenges an action of the President, proper evaluation of standing is particularly important.  See id. ("Because Plaintiffs have invoked Article III jurisdiction to challenge the conduct of the executive branch of government, the necessity of a case or controversy is

of particular import."). We therefore must address whether MSLF had standing to bring its claims against Defendants.

## B. MSLF's Standing

As we recently noted, "[s]tanding is determined as of the time the action is brought." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation."); Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed."); Carr v. Alta Verde Indus., Inc., 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint.")). Therefore, we must evaluate MSLF's standing as of the time it filed its complaint.

### 1. Associational standing

MSLF is relying on the doctrine of associational standing in this case and is not asserting separate independent injury to itself. Thus, because MSLF is an association bringing suit on behalf of its members, it could only have standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 342–43 (1977). Although this quotation refers to "members," plural, if even one member of the association would have had standing to sue in his or her own right, that is sufficient. See Warth v. Seldin, 422 U.S. 490, 511 (1975) ("The association must allege that its members, *or any one of them*, are suffering immediate or threatened injury as a result of the challenged action.") (emphasis added).

### 2. Individual standing

In evaluating whether the first prong of associational standing has been met, we ask whether any member of MSLF would have had standing individually to bring these claims. The requirements for an individual to have standing in federal court are threefold.

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between that injury and the challenged action of the defendant – the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury.

Nova Health Sys., 416 F.3d at 1154 (internal citations omitted). We therefore must evaluate whether any individual MSLF members, at the time MSLF filed its complaint, see id., had suffered a redressible injury caused by Defendants.

### 3. Burden of proof

The party asserting jurisdiction — here, MSLF — has the burden of establishing the elements of standing. Id. ("As the party seeking to invoke federal jurisdiction, the plaintiff . . . has the burden of establishing each of the[] three elements of Article III standing."). Because standing was challenged in a motion that was alternatively designated as a motion for summary judgment, MSLF "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citation omitted); see also Nova Health Sys., 416 F.3d at 1154 ("At the summary judgment stage, the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish each of the[] elements [of standing]."); Cf. United States v. Hays, 515 U.S. 737, 743 (1995) ("We have . . . made clear that it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. And when a case has proceeded to final judgment after a trial, as this case has, those facts (if controverted) must be supported adequately by the evidence adduced at trial to avoid dismissal on standing grounds.") (quotations, citations omitted). Moreover, MSLF concedes on appeal that standing in this case should now be evaluated under summary judgment standards because it

acknowledged it is required to "demonstrate specific facts necessary to support the claim of injury."

### 4. Analysis

#### a. Affidavit of Don Wood

MSLF claims that it has established the "specific facts" necessary to show individual standing through an MSLF member — specifically, Don Wood. It points to the affidavit of Mr. Wood, which states that he is a member of MSLF and that his business, Southwest Stone, mined alabaster from mines on what is now Monument land for nearly 20 years. Approximately sixty to seventy percent of Southwest Stone's alabaster sales came from three such mines. In 1998, the Bureau of Land Management voided Southwest Stone's three mining claims for failure to comply with annual filing requirements. Because the Monument had been established in the area two years earlier, Southwest Stone was unable to refile its mining claims, the loss of which put Southwest Stone out of business in 1999. Mr. Wood maintains in his affidavit that "[b]ut for the creation of the Monument," he and his business partner "would simply have refiled the claims and preserved our business." MSLF argues that this inability to refile the mining claims by Mr. Wood is the injury-in-fact and that "Mr. Wood owes the loss of his entire business and livelihood to the designation of the Monument."[5]

---

[5]We note that the *voiding* of Mr. Wood's mining claims, although clearly
(continued...)

-13-

### b. Timing problem

There is a glaring problem with MSLF's reliance on this alleged injury to Mr. Wood, even taking all of the facts alleged in his affidavit as true, Nova Health Sys., 416 F.3d at 1154. MSLF's Complaint in this action was filed on November 5, 1997, and its Amended Complaint was filed on December 15, 1997. Mr. Wood's mining claims, however, were not voided until 1998. Thus, Mr. Wood's alleged injury — the inability to refile his three voided mining claims — could not have occurred until *after* the "time th[is] action [wa]s brought." Nova Health Sys., 416 F.3d at 1154. Because standing is determined as of the time of the filing of the complaint, Mr. Wood's alleged injury cannot serve as a basis for MSLF's standing in this case.[6]

---

[5](...continued)
injurious to his business, could not be used to establish standing because it was not caused by Defendants' actions in designating the Monument, but by Mr. Wood's failure to comply with filing requirements. Cf. United States v. Locke, 471 U.S. 84, 107 (1985) ("The[] property loss was one appellees could have avoided with minimal burden; it was their failure to file on time--not the action of Congress--that caused the property right to be extinguished.").

[6]Dismissal based on a statute of limitation can occur where the complaint is filed too long *after* the injury occurs. Here, we are presented with the opposite situation: MSLF filed its complaint *before* the asserted injury on which it attempts to rely occurred. Although this basis for dismissal is arguably a peculiar one, especially if Mr. Wood's loss was an otherwise sufficient injury-in-fact (an issue we do not address), the peculiarity is due solely to MSLF's *post hoc* reliance on an injury that had not even occurred when MSLF filed its complaint. Mr. Wood's loss simply could not have been part of the "legal harm" alleged in MSLF's complaint because it had not yet happened.

We note that in its reply brief, MSLF argues that "Mr. Wood was 'injured'

(continued...)

-14-

### c. Conclusion

Because MSLF relies solely on Mr. Wood's declaration for the "specific facts" necessary to support its standing allegations,[7] our conclusion that Mr. Wood's affidavit does not demonstrate an injury-in-fact "as of the time the action [wa]s brought" means that MSLF has not met its burden of establishing constitutional standing to bring this action.[8]

### III. CONCLUSION

For the foregoing reasons, we DISMISS this appeal on the ground that MSLF has not met its burden of establishing the elements of standing.

---

[6](...continued)
because he was deprived of his statutory right to enter upon and locate additional mining claims within the lands withdrawn by designation of the Monument." Because the inability to locate new mines happened at the time the Monument was created, this alleged injury would not seem to suffer from the same timing problem as Mr. Wood's inability to *refile* his voided claims. However, we decline to address this issue since it was raised for the first time in a reply brief. Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000). In any event, this claim is not supported by the evidence.

[7]Although MSLF states that the experience of Mr. Wood is "but one poignant example of the injuries suffered by MSLF members in the Monument area and throughout Utah and the Southwest as a result of the Monument designation," it gives no other specifics of those injuries and we have found none in the record.

[8]Because we conclude that MSLF has not established an injury, we need not address the second and third prongs of individual standing (causation and redressibility). And, because MSLF has not shown "specific facts" establishing that any of its members would have standing to bring this action, we need not address the second and third prongs of associational standing.

-15-