# Whether the Review Described in Section 4 of Executive Order 13497 Remains Pending for Purposes of Section 7 of That Order

Although the meaning of the word "Review" in section 7 of Executive Order 13497 is not unambiguous, it is best construed in light of the Order's text and purposes in a manner that treats it as pending as to a detainee at the Guantánamo Bay Naval Base whose case has been referred to, but not finally resolved by the formal protocol that the Departments of Defense and Justice have agreed upon and promulgated for further disposition of the case.

August 28, 2009

MEMORANDUM OPINION FOR THE EXECUTIVE SECRETARY
TASK FORCE ON DETENTION POLICY

Section 7 of Executive Order 13492 ("Review and Disposition of Individuals Detained at the Guantánamo Bay Naval Base and Closure of Detention Facilities") ("Executive Order" or "Order") directs the Secretary of Defense to

> immediately take steps sufficient to ensure that during the pendency of the Review described in section 4 of this order, no charges are sworn, or referred to a military commission under the Military Commissions Act of 2006 and the Rules for Military Commissions, and that all proceedings of such military commissions to which charges have been referred but in which no judgment has been rendered, and all proceedings pending in the United States Court of Military Commission Review, are halted.

77 Fed. Reg. 4897, 4899 (Jan. 22, 2009).

Consistent with this directive, on January 20, 2009, the Secretary of Defense ordered the Chief Prosecutor of the Office of Military Commissions to seek 120-day continuances in all pending Commissions cases in which charges had already been referred. Memorandum for the Convening Authority for Military Commissions and the Chief Prosecutor, Office of Military Commissions, from Robert M. Gates, Secretary of Defense, *Re: Military Commissions* (Jan. 20, 2009) ("Jan. 20 Order"). The prosecution moved to continue all such cases as directed, and before the first set of continuances expired, the prosecution sought further continuances, which the courts granted in May 2009. In that same Order on January 20, 2009, the Secretary of Defense also ordered the Chief Prosecutor to cease swearing any further charges to the Convening Authority for Military Commissions, and ordered the Convening Authority not to refer any additional cases to military commissions. *Id*. In compliance with the Secretary's orders, no Commissions charges have been sworn or referred since that date. As of the current date, cases with referred

charges pending against ten detainees are currently continued.[1] And with respect to the six other detainees against whom the Chief Prosecutor had sworn charges prior to January 20, 2009, the Convening Authority has not yet referred them for trial.[2]

Section 4 of the Executive Order establishes the Review referenced in section 7. Pursuant to section 4(c)(3), "Determination of Prosecution," the Review Participants have collectively "evaluated" the cases of a number of Guantanamo detainees not approved for release or transfer, and have collectively "determine[d]" that "the Federal Government should seek to prosecute" approximately 35 such detainees, including nine of the ten detainees against whom charges have been referred to military commissions,[3] and four of the six detainees against whom charges have been sworn but not yet referred.[4] Section 4(c)(3) also prescribes an evaluation of whether it is "feasible" to prosecute such persons in an Article III court; accordingly, the Review Participants have determined that such Article III prosecution is "feasible" or "potentially feasible" for each of the roughly 35 detainees described above. The Participants then referred each of the cases to take what section 4(c)(3) calls any "necessary and appropriate steps based on [their] determination[]."

In order to take such "necessary and appropriate steps," the Departments of Defense ("DOD") and Justice ("DOJ") have agreed upon and promulgated a formal protocol for further disposition of the cases. *See* Determination of Guantanamo Cases Referred for Prosecution (undated; promulgated by the Departments of Defense and Justice) ("Protocol"). Pursuant to that Protocol, the cases in question have been assigned to a "team" composed of Assistant U.S. Attorneys, attorneys from the National Security Division ("NSD") of DOJ, and personnel from DOD, including prosecutors from the Office of Military Commissions. The Protocol directs the team to recommend, based on factors articulated in the Protocol, whether, the case should be prosecuted in an Article III court (including in what venue), or in a "reformed military commission." If the team concludes that prosecution "is not feasible in any forum, it may recommend that the case be returned to the Executive Order 13492 Review for other appropriate disposition." After the team has made its recommendation, NSD and the participating DOD entities are to "jointly determine whether the case is feasible for prosecution, and the appropriate forum (and, if necessary, venue) for that prosecution." They are

---

[1] Those detainees are Khalid Sheikh Mohammed, Walid Muhammad Salih Mubarek Bin Attash, Ramzi Binalshibh, Ali Abdul Aziz Ali, and Mustafa Ahmed Adam al Hawsawi (the "9/11 defendants," whose cases have been consolidated for trial), Omar Ahmed Khadr, Almed Mohammed Ahmed Haza al Darbi, Ibrahim Ahmed Mahmoud al Qosi, Mohammed Kamin, and Noor Uthman Muhammed.

[2] Those detainees are Obaiduullah, Fouad Mahmoud Hasan al-Rabia, Faiz Mohammed Ahmed al-Kandari, Tarek Mahmoud El Sawah, Sufyian Barhoumi, and Ghassan Abdullah al Sharbi.

[3] The exception is Kamin.

[4] The exceptions are al-Rabia and al-Kandari.

then to transmit that determination to the Attorney General, along with any dissenting views, and the Attorney General, in consultation with the Secretary of Defense, will then "make the final decision as to the appropriate forum and (if necessary) venue for any prosecution."

All but one (Ghailani) of the approximately 35 detainees referred by the Review Participant to the Justice Department are still undergoing the process established by the protocols.[5] We understand that this process likely will not be completed, and final prosecutorial decisions will not be made by the Attorney General, until at least some time in October.

With respect to those 35 or so detainees who are still being considered under the Protocol, you have asked us whether the Secretary of Defense remains bound by the directive of section 7 that he "take steps sufficient to ensure that during the pendency of the Review described in section 4 of this order, no charges are sworn, or referred to a military commission . . . , and that all proceedings of such military commissions to which charges have been referred but in which no judgment has been rendered . . . are halted." Your inquiry concerns whether the "determinations" thus far made by the Review Participants suffice to complete the Review described in section 4 for purposes of section 7, such that the Review is no longer pending—in which case the Secretary would be relieved of his legal obligation to take steps to halt the proceedings and prevent new charges from being sworn or referred to commissions.

In considering this issue, we sought the views of the drafters of the Protocol and received the views of the General Counsel of the Department of Defense. We also consulted with the Executive Director of the Task Force that the Attorney General established to make the initial "determinations" under section 4 regarding the way in which the Review has been operating. We now conclude that, although the meaning of the word "Review" referred to in section 7 is not unambiguous, it is best construed in light of the Order's text and purposes in a manner that treats it as pending as to a detainee whose case has been referred to, but not finally resolved by, the Protocol process. Accordingly, we believe the section 7 obligation is best construed as remaining in effect during the pendency of the Protocol process.

## I.

We must first consider a threshold matter—namely, whether the phrase "the pendency of the Review" in section 7 refers to the Review of the entire population of Guantanamo detainees, or merely to the Review of the particular detainee in

---

[5] Ghailani has been indicted in the Southern District of New York, and on May 29, 2009, the Convening Authority withdrew all charges against him that had been referred to a military commission. *See* Memorandum of Susan J. Crawford, Convening Authority for Military Commissions (May 29, 2009).

question. Section 4(a), entitled "Scope and Timing of Review," provides that "[a] Review of the status of *each* individual currently detained at Guantanamo shall commence" (emphasis added). Thus, the reference in section 7 to "the Review described in section 4" can be read to refer only to review of each individual detainee rather than review of all the Guantanamo detainees. Such a reading, moreover, would not be inconsistent with the purpose of the Order. Once the Review of an individual detainee has been completed under section 4, there is no obvious reason why it would be necessary to halt a military commission proceeding against him so that reviews of other detainees may be completed (including those who the Review Participants may not even refer for possible prosecution). Thus, if an individual detainee's Review under section 4 is no longer pending, the section 7 obligation on the Secretary is best read not to apply to that detainee.

## II.

Having addressed this threshold question, we must next turn to the question of whether, for purposes of section 7, "the Review described in section 4" is complete and therefore no longer pending with respect to any or all of the detainees the Review Participants have determined "the Federal Government should seek to prosecute" and who are currently being processed under the Protocol. If such a determination necessarily completed the "Review" as to a detainee, then the Secretary of Defense would no longer be bound by section 7 to take steps sufficient to "halt" the military commission proceedings or charges with respect to that detainee. Conversely, if such a determination does not complete the "Review," then the Secretary would remain bound.

In answering this question, we begin with the text of the Executive Order. We then consider how it has been implemented by the Review Participants, and the underlying purposes that animate it.

In our view, the text of the Order supports the conclusion that the Review is still pending with respect to the roughly 35 detainees currently being treated under the Protocol, notwithstanding the fact that the Review Participants appear to have fulfilled their obligation under section 4(c)(3) to evaluate their cases and determine whether "the Federal Government should seek to prosecute" them. When considered as a whole, section 4 describes a review that comes to completion not upon the Participants' "determination" of whether it is possible to transfer or release an individual consistent with the national security and foreign policy interests of the United States (section 4(c)(2)), or whether the federal government should seek to prosecute the individual (section 4(c)(3)), but instead upon the "achieve[ment]" of a detainee's "disposition" (section 4(c)(4)). We base this conclusion primarily on the text of section 4(c)(4), when read in light of the overall structure and purpose of the Order.

We begin with section 4(a). As noted above, that subsection provides that a "review" shall commence immediately "of the status" of each individual detainee.

Section 4(b) comes next; it identifies the officials who shall participate in the Review ("Review Participants") and that the Attorney General shall coordinate it. Section 4(c) is titled "Operation of Review"; it sets forth in four numbered paragraphs the duties of the Review Participants and the actions that must be taken by certain officials, including Review Participants acting either collectively or individually, relating to the status of individual detainees. Most importantly, section 4(c)(2)–(4) identifies certain determinations that must be made and certain actions that must be taken in consequence of those determinations as to individual detainees; and those paragraphs set forth a sequence by which such determinations and actions are to occur.

Paragraphs (2) and (3) of section 4(c) require that a certain "determination" be made with respect to detainees. Then, in each paragraph, there is a final directive instructing particular officials to take certain actions in light of those determinations. Paragraph (2) of the subsection provides that the "Review" shall make a determination "whether it is possible to transfer or release" a detainee. That paragraph then concludes with a sentence stating that the Secretaries of Defense and State, "and, as appropriate, other Review participants shall work to effect promptly the release or transfer of all individuals for whom release or transfer is possible." Similarly, paragraph (3) of the subsection provides that

> the cases of individuals not approved for release or transfer shall be evaluated to determine whether the Federal Government should seek to prosecute the detained individuals for any offenses they may have committed; including whether it is feasible to prosecute such individuals before a court established pursuant to Article III of the United States Constitution.

The paragraph then concludes with a clause instructing the "Review participants" to "in tum take the necessary and appropriate steps based on such determinations."

At issue here is whether the "Review described in section 4" remains "pending" during the actions of the Review Participants prescribed by those final clauses— i.e., working to effect release or transfer, and taking "necessary and appropriate steps based on" the determination that the government should seek to prosecute. The Department of Defense is of the view that, although the "determinations" mandated in paragraphs (2) and (3) are part of "the Review described in section 4," the steps and actions required to be taken in response to, or based upon, those determinations fell *outside* the scope of that Review, and thus that the Review is not "pending" during those attempts to implement the determinations. If this were correct, then the "Review described in section 4" would no longer be pending as to an individua1detainee for purposes of section 7 once the determination has been made that transfer or release is possible or, alternatively, that prosecution should be sought—regardless of whether additional implementing

steps or actions based on the "determination" were taken that might result in a more final settlement of the status of the detainee.

This interpretation, however, would result in a potentially troubling anomaly, at least with respect to cases referred for possible prosecution. As paragraph (3) itself reflects, the Executive Order is plainly concerned not only with whether a detainee should be prosecuted but also with the forum in which he should be prosecuted— i.e., whether in an Article III tribunal or in a military commission. Indeed, the paragraph expressly instructs that the determination regarding prosecution shall include a determination regarding not only whether prosecution should be sought but also whether prosecution in an Article III forum is "feasible." Furthermore, one of the findings in the Order (*see* section 2(f)) provides that "[i]t is in the interests of the United States to review whether *and how* any such individuals can and should be prosecuted" (emphasis added). Yet under the reading set forth above, military commission proceedings could resume, or new charges be sworn and referred, merely by virtue of a determination that "the Federal Government should seek to prosecute" the individual detainee, but before any decision on the forum in which such prosecution will transpire. It is not clear how that consequence, would accord with the Order's apparent purpose to halt military commission proceedings and charges until a review has been made with respect to "whether and how" a detainee currently held at Guantánamo will be prosecuted.

Whether or not that anomaly, standing alone, would be enough to disfavor such an interpretation, the text of section 4(c)(4) of the Order points strongly towards a contrary interpretation of whether the "Review described in section 4" is pending during the actions that are taken to implement the "determinations" in paragraphs (2) and (3). The principal sentence in paragraph (4) provides that "[w]ith respect to any individuals currently detained Guantánamo *whose disposition is not achieved under paragraphs (2) or (3) of this subsection*, the Review shall select lawful means, consistent with the national security and foreign policy interests of the United States and the interests of justice, for the disposition of such individuals" (emphasis added). The reference here to the key actions in paragraphs (2) and (3) is not to any "determination" being made, but, rather to a "disposition" being "achieved." The use of this distinct phrasing bespeaks a final resolution of how a detainee shall be treated based on a determination, rather than the predicate determination itself, which does no more than refer a case to authorities with the legal power to effect the disposition. *See, e.g.*, *Black's Law Dictionary* 505 (8th ed. 2004) (defining "disposition" to include "a final settlement or determination"). The use of the verb "achieved" is also telling. One "achieves" an outcome, whereas one makes (but does not "achieve") a determination. Moreover, the plain language of the remainder of the relevant sentence in paragraph (4) also directly supports the conclusion that the Review remains pending—because it specifically provides that the Review must select "lawful means, consistent with the national security and foreign policy interests of the United States and the interests of justice, for the disposition of such individuals"

of the relevant officials are not able to achieve any of the relevant dispositions (i.e., transfer, release, or prosecution in one forum or the other).

We think these textual markers are significant. They support the conclusion that the "Review described in section 4" is pending as to a detainee unless a "disposition" has been "achieved" for that detainee under one of paragraphs (2), (3), or (4). Manifestly, no such disposition has been achieved under any of those paragraphs with respect to the 35 detainees in question here. Those detainees have at most been determined to be individuals the federal government should seek to prosecute. But a determination that their case should be referred for consideration by prosecutors is not the achievement of a "disposition . . . under paragraph[] (3)." At least until there is a final judgment to prosecute—something that occurs at the earliest upon the completion of the Protocol process when, by its terms, the Attorney General makes a "final" decision regarding prosecution and forum—no "disposition" has been "achieved . . . under paragraph (3)." And if the decision is ultimately made *not* to prosecute a detainee (or, in paragraph (2), if transfer of a detainee proves impossible), the Review must then select other lawful means "for the disposition of such individuals"—thus confirming that the Review remains pending until such a disposition is achieved.

To be clear, although the word "disposition," consistent with the dictionary definition, connotes a "final" settlement of a matter, we would not read paragraph (4) to suggest that the Review is pending so long as it is not yet known whether the detainee will be convicted in a particular tribunal or released from law-of-war detention at the end of an armed conflict. Such a reading would, among other things, effectively preclude the option of using military commissions altogether, because section 7's obligation to ensure a "halt" to commission proceedings would remain binding on the Secretary while an ultimate "disposition" under section 4(c)(4) remained open. This outcome is something the Order plainly does not intend. Instead, we read "achieve[ment]" of a "disposition" to mean, at the very least, a treatment of the detainee by the Executive Branch that is distinct from the mere referral of the case to prosecutors upon determination that the federal government "should seek" to prosecute—for example, the Attorney General's decision, at the end of the Protocol, to try the case in a particular forum, or the actual charging of the individual. This conclusion comports with the title of paragraph (3), which refers to "Prosecution" and not "Conviction." It is also consistent, if not compelled by, the reference in section 4(a) to the need for a review of the "status" of each individual detainee. The individual's status with respect to prosecution, may be understood to be "finally settled" for purposes of the Order upon a final decision regarding whether and how he will be prosecuted. On this understanding, "the prosecution" disposition is not achieved at least until the Protocol process runs its course. Because that has not yet occurred as to all but one of the detainees the Review Participants have referred for possible prosecution, however, we need not decide here precisely whether it is at that point or upon the filing of charges that, in fact, a "disposition" under paragraph (3) will have

been "achieved" for purposes of paragraph (4). We also do not consider here the precise time at which there is a "disposition" in a case that the Review Participants refer directly to the Office of Military Commission, after having deemed that it was not feasible for Article III prosecution but nevertheless a case the federal government "should seek to prosecute."

In sum, the mere determination that the government should *seek* to prosecute a detainee, and the referral of the case for consideration by the Department of Justice pursuant to the Protocol, does not "achieve" a "disposition." It simply triggers a new process under the Protocol by which a disposition—such as the filing of charges or at least the rendering of a final determination by the Attorney General that charges should be filed—might be "achieved." And until such a disposition, the Review remains pending. The Review described in section 4 accordingly is best understood as a process that encompasses the entirety of the functions set forth in section 4(c) for achieving a disposition of a detainee, and the Review comes to an end only once the full sequence of determinations and actions set forth in section 4(c) has run its course. For that to occur, under the plain terms of paragraph (4), either a disposition must have been achieved pursuant to either paragraphs (2) or (3)—in which case there is nothing left for the Review to do— or, failing that, the Review must then select some other lawful disposition. Only if a disposition has been achieved pursuant to one of those paragraphs will the Review described in section 4 have been completed. Thus, as the heading of section 4(c) indicates, *all* of the functions described in that subsection, including the steps taken to transform determinations into a disposition, constitute the "Operation of the Review."[6]

This interpretation of the Order's text is consistent with the practice of the Review Participants under the Order. We have been informed that the Protocol process described above has not been uniformly understood as part of the "determination" process described in section 4(c)(3). Rather, we have been informed that at least some Participants apparently have understood the Protocol process as constituting all or part of the "necessary and appropriate steps based on such determinations" that paragraph (3) describes. But, even if that were correct, it would not mean "the Review described in section 4" ends for purposes of section 7 once the prosecution determination has been made by the Review

---

[6] We do not believe the use of the word "status" in section 4(a)'s reference to a "review of the status of each individual currently detained at Guantánamo" is to the contrary. While that word could refer to the manner in which the Review Participants determine the individual can or should be treated, it is just as naturally read to mean the manner in which the Executive Branch in fact treats the detainee. For the reasons given above, we would read the final settlement of the "status" to be the "disposition" referenced in paragraph (4) and referred to at other points in the Order, rather than the mere determination" referenced in paragraph (3). Moreover, even if "status" were construed to have the "determination" meaning implicit in DOD's interpretation, it still would not necessarily follow that the Review is no longer pending once such a determination is made because, as paragraph (4) expressly contemplates, the Review will still be operative in the event no disposition is achieved.

Participants. Rather, as explained above, the Review in section 4 remains pending until a "a disposition" is "achieved" under paragraphs (2), (3) or (4). Quite clearly, no disposition—no final settlement or decision of how the government will in fact treat the detainee—is achieved under paragraph (3) until, at the very least, a decision to prosecute in a particular forum is made on the basis of the Review Participants' prosecution referral. Indeed, the Review Participants, collectively— i.e., the Task Force and Review Panel that the Attorney General established—have no authority to effectuate such a final disposition with respect to prosecution, an authority vested in the Attorney General (with respect to Article III prosecution) and in particular DOD officials (with respect to military commissions). And the Protocol itself reflects just this understanding. Its first sentence reads: "This protocol governs *disposition* of cases referred for possible prosecution pursuant to Section 4(c)(3) of Executive Order 13492, which applies to detainees held at Guantánamo Bay, Cuba." Protocol at 1 (emphasis added).

Furthermore, this interpretation is consistent with the purposes of the Order, as reflected in its other provisions. The Order makes clear in section 2(b) that the "prompt and appropriate disposition of the individuals currently detained at Guantánamo and closure of the facilities in which they are detained would further the national security and foreign policy interest of the United States and the interests of justice." Plainly, "disposition" in this usage connotes a final decision as to how the government will treat the detainees, and not a mere determination that "it is *possible* to transfer or release a detainee," or "the Federal Government *should seek* to prosecute the detained individuals," or that "it is *feasible* to prosecute such individuals before a court established pursuant to Article III." Consistent with this conclusion, the final sentence of section 2(b) reads: "To the extent practicable, the prompt and appropriate disposition of the individuals detained at Guantánamo should precede the closure of the detention facilities at Guantánamo" (emphasis added). The constraint of practicability makes more sense with respect to the achievement of a final outcome—such as the actual transfer or filing of charges—than the mere making of a determination that remains to be implemented.

More generally, there is a basic logic to the idea, discussed above, that the military commission proceedings should be halted, and no charges sworn or referred, during the pendency of a process by which the final judgment as whether and how a detainee should be prosecuted is being made. This is consistent with the understanding of the Secretary of Defense when, in accord with the obligation that section 7 imposes, he first ordered a halt to commission proceedings and charges on January 20: He wrote that "[t]his is to provide the Administration sufficient time to conduct a review of detainees currently held at Guantánamo, to evaluate the cases of detainees not approved for release or transfer to determine whether prosecution may be warranted for any offenses these detainees may have committed, *and to determine which forum best suits any future prosecutions.*" Jan. 20 Order (emphasis added).

The reading of the text set forth above aligns the Order with precisely this logical outcome: It treats the section 4 Review to which section 7 refers as a process that is completed upon the achievement of a final disposition of a detainee—whether (i) through transfer or release pursuant to the efforts of the Secretaries of Defense and State in working to effect the Review Participants' determination that release or transfer is possible; (ii) through a final decision to prosecute pursuant to the necessary and appropriate steps taken by the relevant authorities based on determinations by the Participants that the federal government should seek to prosecute the detainee; or (iii) if neither a transfer or prosecution disposition is achieved, through some other lawful disposition selected by the Review Participants under paragraph (4) and then promptly implemented by the appropriate authorities.

The alternative interpretation of the Order that DOD offers focuses on section 4(c)(3) and does not account for the fact that section 7 refers more generally to "the Review described in section 4," making no special reference to any of its subsections. The DOD interpretation does not account as well as the one offered above for the language of section 4(c)(4). Accordingly, we think the interpretation we offer above is the stronger and more logical reading of the Order, and is also more consistent with the Order's (and section 7's) manifest design.

## III.

Although this is the better reading of the Order, however, we are not prepared to say that it the only possible reading, such that it would be impermissible for the President to interpret his own executive order in accord with the alternative interpretation. *See Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d 1172, 1196 (D. Utah 2004) ("courts will generally give substantial deference to the President's . . . interpretation and use of an executive order"), *appeal dismissed*, 455 F.3d 1094 (10th Cir. 2006) (for lack of standing); *cf. Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (where agency's interpretation of its own regulation is reasonable, it is entitled to substantial judicial deference); *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008) (agency interpretation of its own regulations should be accepted, unless it is "'plainly erroneous or inconsistent with the regulation'") (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). The phrase "the Review described in section 4" is not unambiguous. One might read the word "Review" in section 7 to refer to something less than all of the steps and actions—the "operation of the Review"—prescribed in section 4(c) and, in particular, to refer 'only to those actions that pertain to *determinations* of how the government can or should treat the detainees, and the actions taken based on such a determination would not be part of the "Review" itself. To be sure, even on this reading, section 4(c)(4) expressly contemplates that there could be further action by the "Review" in the event no disposition were achieved. But, it might be argued, in that case the Review is not "pending" during the attempted implementa-

tion of the determinations (e.g., while the Protocol process is underway); it is instead dormant, and would become pending once more only if and when no disposition is achieved in a particular case.

But although we cannot say that the Order clearly precludes this alternative reading, we do believe the Order is better read to deem the "Review" pending for purposes of section 7 until a disposition of transfer or release under paragraph (2) of section 4(c), regarding prosecution in a particular forum under paragraph (3), or regarding some other lawful disposition under paragraph (4), is achieved. Such a reading avoids the seemingly anomalous result described above—a result in tension with the Order's apparent design to halt military commission proceedings and charges until a decision is made to actually go forward with a military commission prosecution. It also fits comfortably with the text of the Order, including the heading of section 4(c), "Operation of Review," which presumably describes all of the actions set forth in that subsection, including the implementation of the determinations until a "disposition" is "achieved."

DAVID J. BARRON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
